UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Crim. No. 13-300 28 MAP |
| ) | |
| v. ) | VIOLATIONS |
| ) | |
| JOSEPH BUFFIS, ) | 18 U.S.C. § 1951(a) - |
| Defendant. ) | Extortion By Wrongful Use Of Fear And |
| ) | Under Color Of Official Right |
| ) | (Count One) |
| ) | |
| ) | 18 U.S.C. § 1956(a)(1)(B)(i) - |
| ) | Money Laundering |
| ) | (Counts Two Through Four) |
| ) | |
| ) | 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461 – |
| ) | Criminal Forfeiture |

**INDICTMENT**

The Grand Jury charges:

At all times relevant to this Indictment:

1. Defendant JOSEPH BUFFIS ("BUFFIS") was the Chief of Police of the Lee Police Department (the "LPD"), located in Lee, Massachusetts.

2. BUFFIS's responsibilities included representing the LPD in hearings before the Clerk Magistrate of the Southern Berkshire District Court ("SBDC") in Great Barrington, Massachusetts.

3. The Edward J. Laliberte Toy Fund (the "Toy Fund") was an entity that Buffis operated in connection with his LPD position, ostensibly to provide toys to needy children during the winter holiday season. By posting notices in the local newspaper (*The Berkshire Eagle*), among other means, BUFFIS solicited donations from the general public, ostensibly to

use for toy purchases. BUFFIS controlled the Toy Fund's bank account, which was maintained at Lee Bank.

4. BUFFIS owned, along with his wife, a joint checking account at Berkshire Bank (the "Buffis Joint Checking Account").

5. Citizen 1 and Citizen 2 were two individuals who jointly operated an inn located in Lee, Massachusetts (the "Inn"). Citizen 1 and Citizen 2 marketed the Inn through a website on the Internet and received a substantial number of guests from outside the Commonwealth of Massachusetts. The Inn maintained a bank account at TD Bank.

6. On or about January 19, 2012, the LPD and the Massachusetts State Police ("MSP") conducted an undercover operation at the Inn as part of an investigation into prostitution. While the LPD and the MSP did not arrest anyone on that date, BUFFIS informed *The Berkshire Eagle* that Citizen 1 and Citizen 2 had been arrested on prostitution-related charges. *The Berkshire Eagle* reported the arrests later that night and then published a similar article the following day, which caused Citizen 1 and Citizen 2 emotional distress and resulted in lost business for the Inn.

7. On or about January 20, 2012, a LPD Police Officer submitted applications for criminal complaints against Citizen 1 and Citizen 2 to the Clerk Magistrate of the SBDC. The proposed complaints charged Citizen 1 and Citizen 2 each with Keeping A House Of Prostitution (in violation of M.G.L. Ch. 272 § 24) and Conspiracy (in violation of M.G.L. Ch. 274 § 7), and Citizen 1 additionally with Sexual Conduct For A Fee (in violation of M.G.L. Ch. 272 § 53A/A), all in connection with alleged prostitution activities at the Inn.

8. On or about February 21, 2012, BUFFIS appeared with Citizen 1 and Citizen 2 at the SBDC for a Magistrate Hearing concerning the proposed complaints. Prior to the hearing,

BUFFIS met alone with Citizen 1 and Citizen 2 to discuss resolving the case without any criminal charges being filed. During this meeting, Citizen 1 and Citizen 2 offered to donate $1,000 to a local dog rescue fund, but BUFFIS insisted that Citizen 1 and Citizen 2 donate $4,000 to the Toy Fund. Citizen 1 and Citizen 2 initially objected, but ultimately agreed to do so, in part because they feared that otherwise BUFFIS would advance the case by seeking the complaints, thereby causing them further emotional distress and financial harm. Citizen 2 then wrote a $4,000 check from his personal account payable to the Toy Fund, with the memo line "toy fund donation," and presented the check to BUFFIS. Citizen 2 asked BUFFIS to hold on to the check because his personal account did not contain enough money to fund the check.

9. During this meeting, BUFFIS also asked Citizen 1 and Citizen 2 to execute an agreement entitled "Agreement Between Parties / Accord & Satisfaction." According to this document, which BUFFIS drafted and also executed, the parties agreed that: (a) the Clerk Magistrate found probable cause to issue criminal complaints against Citizen 1 and Citizen 2; (b) none of the parties would disclose the outcome of the proceeding; (c) Citizen 1 and Citizen 2 would be barred from bringing a civil or criminal action against the Town of Lee or its employees; and (d) $4,000 in proceeds would be donated to the Toy Fund "as a voluntary donation in lieu of criminal fines or civil forfeiture action."

10. At the hearing, BUFFIS informed the Clerk Magistrate, in sum and substance, that (a) the matter should be continued only until the end of the day, (b) Citizen 1 and Citizen 2 had agreed to donate the prostitution proceeds, (c) the parties had entered into a non-disclosure agreement with respect to the matter, and (d) the LPD did not intend to proceed with any charges. Accordingly, the Clerk Magistrate did not issue any criminal complaints against Citizen 1 and Citizen 2.

11. Later on February 21, 2012, Citizen 2 funded the personal check that he gave to BUFFIS by writing a $4,000 check from the Inn's TD Bank account payable to himself and depositing this check into his personal account.

12. On or about February 23, 2012, BUFFIS deposited Citizen 2's $4,000 check into the Toy Fund's bank account. Prior to the $4,000 deposit, the Toy Fund account had a balance of only $44.92.

13. On or about the following dates, in order to conceal the nature, location, source, ownership, and control of Citizen 2's "donation" to the Toy Fund, BUFFIS transferred $3,990 from the Toy Fund account to the Buffis Joint Checking Account by writing the following checks to "Cash" with blank memo lines and then depositing these checks into the Buffis Joint Checking Account:

| Check Date | Deposit Date | Amount | Check No. |
|---|---|---|---|
| 02/22/12 | 02/23/12 | $2,760 | 185 |
| 02/26/12 | 02/27/12 | $1,000 | 194 |
| 03/20/12 | 03/20/12 | $ 230 | 236 |

14. From approximately February 23, 2012 to approximately April 8, 2012, BUFFIS and/or his wife used the Toy Fund monies deposited into the Buffis Joint Checking Account as a source of cash, as well as to conduct transactions at local businesses - including a liquor store and a hardware store - and to make payments on a credit card account in the name of BUFFIS's wife.

15. On or about March 29, 2012, after BUFFIS transferred $3,990 from the Toy Fund account to the Buffis Joint Checking Account, only $54.92 remained in the Toy Fund account.

16. Between on or about March 29, 2012 and on or about June 25, 2012, in order to conceal further his diversion of $3,990 of the $4,000 "donation" from the Toy Fund to the Buffis Joint Checking Account, BUFFIS made false statements to MSP investigators concerning the disposition of the "donation." For example, on March 30, 2012, BUFFIS signed a written statement in which he claimed that the Toy Fund presently had $4,042, including $4,000 from Citizen 1 and Citizen 2.

COUNT ONE:     Title 18, United States Code, Section 1951(a) -
               Extortion By Wrongful Use Of Fear And Under Color Of Official Right

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 16 are realleged and incorporated herein.

18. On or about February 21, 2012, in Berkshire County, in the District of Massachusetts and elsewhere,

JOSEPH BUFFIS,

defendant herein, did obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951, in that defendant JOSEPH BUFFIS obtained property not due him and his office, from Citizen 1 and Citizen 2, with the consent of Citizen 1 and Citizen 2, induced by the wrongful use of fear and under color of official right.

All in violation of Title 18, United States Code, Section 1951(a).

<u>COUNTS TWO THROUGH FOUR</u>:   Title 18, United States Code, Section 1956(a)(1)(B)(i) - Money Laundering

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through 16 are realleged and incorporated herein.

20. On or about the following dates, in Berkshire County, in the District of Massachusetts and elsewhere,

JOSEPH BUFFIS,

defendant herein, knowing that the property involved in the following financial transactions represented the proceeds of some form of unlawful activity, did knowingly conduct the following financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to wit, extortion by wrongful use of fear and under color of official right, in violation of Title 18, United States Code, Section 1951(a), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| Two | 02/23/12 | Deposit of Toy Fund account Check No. 185 in the amount of $2,760 into the Buffis Joint Checking Account. |
| Three | 02/27/12 | Deposit of Toy Fund account Check No. 194 in the amount of $1,000 into the Buffis Joint Checking Account. |
| Four | 03/20/12 | Deposit of Toy Fund account Check No. 236 in the amount of $230 into the Buffis Joint Checking Account. |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## **FORFEITURE ALLEGATION**
(Title 18, United States Code, Sections 981 and 982,
and Title 28, United States Code, Section 2461(c))

The Grand Jury further charges:

1. Upon conviction of the offense alleged in Count One of this Indictment,

### JOSEPH BUFFIS

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to such violation.

2. Upon conviction of any of the offenses alleged in Counts Two through Four of this Indictment,

### JOSEPH BUFFIS

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such violations, or any property traceable to such property.

3. If any of the property described in paragraph 1 hereof as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), and in paragraph 2 hereof as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred to, sold to, or deposited with a third party;

   c. has been placed beyond the jurisdiction of this Court;

   d. has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), to seek forfeiture of all other property of the defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
STEVEN H. BRESLOW
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS:

Returned into the District Court by the Grand Jurors and filed on 8-8-2013 2013. at 11:04am.

_____
DEPUTY CLERK OF THE COURT